5 So.2d 113

**BAREFIELD et al. v. STATE.**

**4 Div. 601.**

Court of Appeals of Alabama.

June 24, 1941.

Rehearing Denied June 30, 1941.

M. I. Jackson and R. H. Bennett, both of Clayton, for appellants.

Thos. S. Lawson, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

Conviction of the defendants was rested upon a chain of suspicious circumstances which tended to place them at the scene of the crime. While no motive for the crime was substantially shown and the evidence was none too strong, we think it was sufficient, perhaps, to afford a substantial inference against them and warranted submission to the jury of the question of guilt.

Under such circumstances, the affirmative charge was correctly refused. Wells v. State 29 Ala.App. 586, 199 So. 253; Emerson v. State, ante, p. 89, 1 So.2d 604, 605.

Motive was sought to be established by the sole statement of the appellant, Barefield (denied by him) "that he was going to soon have some beer down there to sell" (meaning in the vicinity of the church); and that the preacher and members of the church were militantly opposed to the licensing of beer in that community.

There may have been a way of adducing legal evidence to support such a theory, but the method adopted here, and by the rulings of the trial court given approval, was unauthorized and resulted in great prejudice to

the substantial rights of each and both of the defendants.

Neither of the defendants was shown to be, or to have been, in any way connected with the selling of beer or with the operation of such a business. And the single statement, above, of the defendant, Barefield, gave no legal warrant for the introduction of evidence of the nature and character of the militant campaign of the church against the beer business and the licensing thereof in that community. Some connection with such business or open antagonism, or expressed opposition, or animus against the church program by the defendants should have been shown before saddling them with the burden of the many adverse inferences apparent by such proof.

The following questions and answers, (all duly objected and excepted to by the defendants), typify the prejudicial and incompetent evidence allowed for the State:

"Q. Now, Mr. Barnes (a church trustee), do you know where a beer joint, known as the Teal beer joint, was?"

(Neither of the defendants was shown to have been connected with or in any way concerned or interested in this "beer joint" or to have been cognizant of the church's effort in that regard. Teal was not on trial nor was there the slightest intimation that either of these defendants was concerned there.)

"A. Yes, sir."

"Q. Where was that place located with reference to that church? A. It was located just inside of Barbour County, just on the Barbour County side of the line on that same highway, a little less than a quarter of a mile from the church, maybe about 300 yards. * * * I never did buy beer there or see anybody else buy it.

"Q. Well I'll ask you this, Mr. Barnes: If, you, as trustee of that church, made any objection to the Alabama Beverage Control Board about beer being sold at the Teal place? A. Well not in the name of the church, but as an individual I did visit the ABC Board in Montgomery.

"Q. How long before the time that church burned did you visit them? A. I went on Monday and the church burned the week—on the following Saturday night.

"Q. I'll ask you if there had been any complaint on the part of the membership of that church about the selling of beer in that community? As individual members of that church? A. Yes, sir; there had been considerable, as individuals, individual members of that church.

"Q. Did that preacher ever preach against the sale of beer in that community? A. In the last sermon he preached in the church he referred to the selling of beer as a part of his sermon, but only as a part of it.

"Q. In other words, the preacher preached a sermon dealing with beer on one Sunday and you went to Montgomery the next Monday to the Alabama Beverage Control Board? A. Yes, sir."

In each instance the defense counsel interposed seasonable and proper objections to the several questions and moved to exclude the several answers thereto. Due exception was reserved to the adverse rulings of the court.

Of similar import was the interrogation of other witnesses, such as:

"Q. I'll ask you to tell the jury whether or not there was any opposition on the part of the members of that church or on the part of the church as a whole to the selling of beer in that community? A. Well I've just heard the members of the church speaking about the beer and the disturbance they would have during the night."

"Q. Well were the members of that church for or against the sale of beer? A. Against it."

"Q. How long had it been since beer was legally sold in that community, prior to the time that the church burned? A. Well I don't remember exactly but it's been approximately a year."

This court fails to appreciate the propriety of such evidence, either as to substance or form, as regards the instant defendants.

The result was to inject into the case a foreign and irrelevant issue with which the defendants were not shown to be cognizant of or concerned with, viz: the very worthy and genuine purpose of the church to prevent the establishment of beer selling in the community. And from that spring-board of proof, the jury was expected and authorized to jump to the conclusion that, because one of the defendants had indicated an intention to sell beer, a priori, their guilt here could be inferred on the basis of the irrelevant testimony elicited by the foregoing questions. Such evidence, in the manner presented, had no place in the case, was entirely irrelevant to any proper issue in the case and should not have been allowed. Inadmissibility thereof being so patent, we deem it unnec-

essary to elaborate further or to particularize or specify the many vices inherent in such a proceeding as the foregoing.

For the errors indicated, a reversal and remandment of the cause is ordered.

Reversed and remanded.

### On Rehearing.

PER CURIAM.

Assuming that the learned Attorney General is serious in his contention that evidence of the anti-beer campaign of the church was admissible against the defendants separately and severally, such a contention is disposed of by a reading of the several questions, plainly improper in form, which sought to, and did, elicit patently illegal, irrelevant and hearsay testimony.

The liquor question, and the evils attendant upon its use, or misuse, has been, and is, a fervid issue in this State and the subject of fervorous argument and earnest partisanship. And before injecting it into the trial of and against these defendants as basis for a motive of arson it should have had, at least, some slight tendency of relevancy as regards the defendants. Clearly, and undoubtedly, such is not the case.

So, grounding our reversal both upon the impropriety in form of the questions asked as well as the illegality and irrelevancy of the evidence elicited thereby, the application for rehearing is overruled.

Opinion extended.

Rehearing denied.