(86 South. 28)

**PARKE et al. v. BRADLEY, State Treasurer, et al. (3 Div. 457.)**

(Supreme Court of Alabama. June 30, 1920.)

**1. Constitutional law ☞60 — Legislature may delegate certain governmental powers.**

The Legislature may delegate to officers, or boards, or commissioners, of its own creation and appointment various governmental powers for the more efficient administration of the laws, subject always to the clearly implied limitation of the Constitution that the lawmaking power, invested exclusively in the Legislature, cannot be delegated to any other department of the government, or to any other agency, either public or private.

**2. Health ☞20—Latitude to be allowed Legislature in passing statutes relating to conservation of health.**

In the construction of statutes for the prevention of disease and conservation of health, under the police power of the state, great latitude should be allowed to the Legislature in determining the character of such laws and how, when, and by whom, in their practical administration, they should be applied.

**3. Health ☞3—Making state medical association the state board of health, a matter within the power of the Legislature.**

It was not beyond the power of the Legislature to constitute the medical association of the state the board of health of the state and the county medical association in affiliation with such association as boards of health for their respective counties, although the members and officers of such association were and are chosen by the association itself, and even though such an association be considered a private corporation, under Code 1907, §§ 698, 699, 702, subd. 6, 733, as amended by Gen. Acts 1919, pp. 909, 911, 943, and Code 1907, § 704.

**4. Constitutional law ☞60—Legislature may empower appointed agencies to make minor rules and regulations.**

The implied constitutional limitation against the delegation of the lawmaking power was never intended to prevent Legislatures from authorizing their own appointed agencies to make such minor rules and regulations as are necessary and appropriate for the administration and enforcement of the general laws of the state.

**5. Physicians and surgeons ☞9—Medical association of state a quasi public corporation, having public duties it cannot evade.**

The medical association of the state of Alabama, having regard to its organization, aims, and activities and its relation to the state board of health and to the public in general, is a quasi public corporation, charged with duties and responsibilities which it cannot evade.

**6. Constitutional law ☞20—Uniform legislative interpretation to be given consideration.**

Old age cannot give validity to a void statute, nor will acquiescence for any length of time, nor practical construction, prevent a court from declaring void a statute which clearly contravenes the Constitution, but the uniform legislative interpretation of doubtful constitutional provisions, running through many years, is of weighty consideration with the courts.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill by Thomas D. Parke and others against R. L. Bradley, as State Treasurer, Samuel W. Welch, State Health Officer, and

the Medical Association of the State of Alabama. Judgment for defendants, and complainants appeal. Affirmed.

The bill is filed by complainants as taxpayers and citizens of Jefferson county for the purpose and with the prayer to prevent by injunction any payment by the state treasury of funds appropriated by the Legislature for use by the state board of health, or its authorized agents, in the discharge of their public duties in the administration of the health laws of the state. The trial court sustained demurrers to the bill.

I. M. Engel, of Birmingham, for appellants.

The mere fact that legislation of this character has been on the statute books for a long time is not conclusive on the courts. 12 Corpus Juris, 775 and 798, and cases cited; 6 R. C. L. 65; 94 U. S. 645, 24 L. Ed. 302; 230 Pa. 528, 79 Atl. 747, Ann. Cas. 1912A, 503; 77 Misc. Rep. 258, 136 N. Y. Supp. 4. While public health is within police power, and the state board may be given authority to administer the laws of the Legislature, such board must be a properly constituted branch of the state government. 5 Ala. App. 212, 59 South. 543; 182 Ala. 516, 62 South. 748; 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499. The legislation enacted and here attacked attempts to delegate a portion of the sovereign powers of the state. 187 Ala. 79, 65 South. 378, L. R. A. 1915A, 295; 76 South. 422. The medical association is a private corporation, and not an arm of the government. 143 Ala. 494, 39 South. 246; 1 Wheat. 171, 4 L. Ed. 63; 75 Ala. 248; 14 Corpus Juris, 73; 7 R. C. L. 39; 1906 Transactions Med. Association, p. 110. The legislation is contrary to the letter and the spirit of the Constitution. 67 Ala. 217; 134 Ala. 392, 32 South. 687; 82 Ala. 242, 2 South. 345; 12 Corpus Juris, 911; 85 Tenn. 383, 5 S. W. 285; Cooley's Const. Lim. (6th Ed.) 137. The state health officer is a public official, and the legislation here attacked is void because it attempts to confer upon a private corporation, the power to appoint him. 183 Ill. 226, 55 N. E. 663, 47 L. R. A. 802, 75 Am. St. Rep. 103; 78 Ill. 405; 167 Mo. 680, 67 S. W. 592, 90 Am. St. Rep. 430; 251 Mo. 325, 158 S. W. 823, Ann. Cas. 1915A, 588; 22 R. C. L. 428; section 22, Const. 1901.

J. Q. Smith, Atty. Gen., Harwell G. Davis, Asst. Atty. Gen., and J. J. Mayfield, of Montgomery, for appellees.

Statutes of long standing, and existing without disapproval through several constitutional conventions, cannot be said to be impliedly prohibited. 174 Ala. 266, 56 South. 974. The protection of the health and lives of citizens is within police power. 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; 214 Mass. 59, 100 N. E. 1020; 108 Miss. 282, 66 South. 741; 16 Wall. 1, 21 L. Ed. 491. The Legislature may delegate to a board, individual, or commission the authority to promulgate rules and regulations, and may make the violation of such rules a crime. 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; 192 Ala. 471, 68 South. 348; 182 Ala. 357, 62 South. 749; 220 U. S. 506, 31 Sup. Ct. 485, 55 L. Ed. 570; 168 Ala. 670; 237 U. S. 391, 35 Sup. Ct. 617, 59 L. Ed. 1011; 179 Ind. 405, 100 N. E. 563, L. R. A. 1915B, 420, Ann. Cas. 1915D, 987. The Alabama Medical Society or Association is a public corporation. 5 S. & P. 17; 44 Ala. 506; 55 Ala. 468; 91 Ala. 523, 8 South. 774; 4 Wheat. 669, 4 L. Ed. 629. It was not an unconstitutional exercise of legislative power to vest the administration of the health and quarantine laws as they did. 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; 16 Wall. 64, 21 L. Ed. 394; 156 Ind. 187, 59 N. E. 468; 143 Cal. 412, 77 Pac. 166, 66 L. R. A. 249; 199 U. S. 552, 26 Sup. Ct. 144, 50 L. Ed. 305; 173 U. S. 32, 19 Sup. Ct. 317, 43 L. Ed. 603; 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061.

SOMERVILLE, J. [1] It is too well settled for further controversy that the Legislature of Alabama may delegate to officers, or boards, or commissioners, of its own creation and appointment, various governmental powers for the more efficient administration of the laws, subject always to the clearly implied limitation of the Constitution that the lawmaking power, invested exclusively in the Legislature, cannot be delegated to any other department of the government, or to any other agency, either public or private. R. R. Commission v. Ala. North. Ry. Co., 182 Ala. 357, 62 South. 749; Fox v. McDonald, 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; 12 Corp. Jur. 839, § 323.

[2] The prevention of disease and the conservation of health, by all of the means known to modern science, is universally recognized as one of the most important and imperious duties of government, and in the construction of statutes enacted for such a purpose, under the police powers of the state, courts are agreed that great latitude should be allowed to the Legislature in determining the character of such laws, and how, when, and by whom, in their practical administration, they should be applied. State v. McCarty, 5 Ala. App. 212, 59 South. 543, approved in Ferguson v. Starkey, 192 Ala. 471, 68 South. 348; 12 R. C. L. 1271, § 10, and cases cited.

[3] The contention of complainants, as stated in brief of counsel, is, not that the Legislature of Alabama is without authority to create a state board of health and empower it to administer the public health laws, but that such a board must be a state board,

which is an arm of the state government, and whose members must be state officials, chosen as such and amenable to public control and supervision; and that it is beyond the power of the Legislature to confer upon a private corporation composed of private individuals any part of the sovereign power of the state in that behalf. This contention explains the theory of the bill of complaint, viz. that the state board of health, as constituted by the statutes of Alabama since 1875, is an illegal body, because it is in fact a private corporation, and because the Legislature cannot make such a private corporation a repository of governmental powers, even for purely administrative purposes.

"The Medical Association of the State of Alabama" was first incorporated by the act of February 13, 1850 (Acts 1849-50, p. 315), without any public functions or duties, and the nature of its corporate aims and activities, prior to 1873, has not been made to appear. In 1873, at an annual meeting held at Tuscaloosa, the association adopted a constitution which declared its aims and functions, and prescribed its mode of organization, the character of its membership, and the names and duties of its officers. Article 3 of this constitution is as follows:

"The objects of this association shall be to organize the medical profession of this state in the most efficient manner possible. To encourage a high standard of medical education, and regulate the qualifications of practitioners of medicine in the state. To promote professional brotherhood, and encourage a high standard of professional ethics. To combine the influence of all the medical men in the state, so as to secure by legislative enactments their own legitimate rights and privileges, and the protection of the people against all medical ignorance and dishonesty. To encourage the study of the medical botany, medical topography, and medical climatology of the state. To secure careful and reliable accounts of all the endemic and epidemic diseases of the state. In a word, to watch over and protect, encourage and aggrandize all the interests of the medical profession of the state."

The membership of the association is, under other articles, made up of four classes: (1) Members of county medical associations, holding a charter from the state association, who cannot vote or hold office; (2) two delegates from each county association, who can vote, but cannot hold office; (3) 100 counselors selected from the permanent members of the state organization (as then existing), vacancies in their number to be filled by the vote of delegates and counselors; and (4) correspondents, who are distinguished nonresident physicians, or ex-counselors of 10 years' service as such. The bill charges that membership in the county medical associations is subject to secret ballot, under which three "black balls" will suffice to reject an applicant.

It appears that, in addition to the customary officers of government, the state medical association elects a board of 10 censors, who serve for five years, and who are substantially an executive committee, a court of impeachment, an auditing board, and a board of examiners for admission to practice medicine.

By the act of February 19, 1875 (Acts 1874-75, p. 130), it was provided:

"That the Medical Association of the State of Alabama, organized in accordance with the provisions of the constitution which was adopted by said association at its annual meeting in the city of Tuscaloosa, in March, 1873, be and is hereby constituted the board of health of the State of Alabama."

By the same act it was also provided that—

"County medical societies in affiliation with the Medical Association of the State of Alabama, and organized in accordance with the provisions of the constitution of said association, * * * be and are hereby constituted boards of health for their respective counties, and as such shall be under the general direction of the board of health of the state of Alabama. * * *"

These provisions have been re-enacted in every Code of Alabama, down to and including the Code of 1907.

The act of September 29, 1919 (Gen. Acts 1919, p. 909), amends, revises, and extends, under a recodification, the health laws of the state, but does not essentially alter the structure of the system.

The present organization of the health department of the state, as fixed by Code provisions, is as follows:

(698) "The Medical Association of the State of Alabama, as constituted under the laws now in force, or which hereafter may be in force, is the state board of health. The state board of censors, of said association, as said board of censors is or hereafter may be constituted under the laws now in force or which hereafter may be in force and under the constitution of said association, as said constitution now exists or may hereafter exist, is, and, when acting as such, shall be known as the state committee of public health; and the Governor of the state of Alabama shall be a member and ex officio chairman of said state committee of public health."

(699) "When the state board of health is not in session said state committee of public health shall act for said board and have and discharge all the prerogatives and duties of said board, including the adoption and promulgation of rules and regulations provided for in this act, when said committee is not in session the state health officer shall act for said board and said committee and shall report to the said board and said committee at its regular meeting his actions, and said board or said committee may at any time revoke any action of said health officer."

(704) "The state board of health shall elect an executive officer, to be known as the state health officer, and shall fix his term of office and salary, provided that the latter shall not exceed five thousand dollars per annum. The state health officer so elected shall, under the

direction of the state board of health, exercise general supervision over the county boards of health and county and municipal health officers, and shall promptly report to said county boards of health any delinquencies of official duty on the part of said county and municipal health officers which may come to his knowledge; shall keep himself informed in regard to all infectious, contagious, and pestilential diseases which may be in danger of invading the state, and shall, so far as authorized by law, take prompt measures to prevent such invasion; shall keep the Governor informed as to the health conditions prevailing in the state, especially as to outbreaks of any of the diseases enumerated in section 716 of this Code, and shall submit to the Governor such recommendations as he deems proper to control such outbreaks."

The authority and jurisdiction of the state board of health are defined by section 702 of the Code, as amended. Its powers are purely executive and administrative, except that under subdivision (6) it is authorized "to adopt and promulgate rules and regulations providing proper methods and details for administering the health and sanitary laws of the state, which rules and regulations shall have the force and effect of law, and shall be executed and enforced by the same courts, bodies, officials, agents and employés as in the case of the health laws"; and the knowing violation thereof is made a misdemeanor, punishable as provided by section 7073 of the Code.

Section 733 of the Code, as amended, largely increases the appropriation made to the state board of health, and directs its expenditure for strictly public purposes germane to the health and welfare of the people of the state. The sums so appropriated are made payable to the state health officer on his requisition approved by the Governor, and an itemized account of all expenditures made by the state board must be rendered annually to the Governor.

A consideration of the statutes which create and organize the state board of health will at once disclose the fundamental fallacy in the contention of complainants. Whether the medical association of the state be regarded as a private, or a public, or a quasi public corporation is, we think, wholly immaterial; for that association, as such, is not invested with any power or authority whatever. On the contrary, recognizing its peculiar aptitude for the important and responsible service required, the state has availed itself of a ready-made organization of professional and practical medical scientists, and has by legislative fiat converted it bodily into a state board of health, and to this public board, not to the state medical association, the Legislature has granted authority and jurisdiction in the premises. State v. Sanders, 187 Ala. 79, 65 South. 378, L. R. A. 1915A, 295.

We are advised of no constitutional inhibition against such legislative action. The implied limitation against any delegation by the Legislature of its lawmaking power is in no way involved or concerned; for, if it were conceded that subdivision (6) of section 702 of the Code, above referred to, is an unconstitutional grant of legislative power, and therefore invalid, its elimination would not affect the structure of a system otherwise complete and subject to no constitutional objection.

[4] But it is thoroughly well settled by the decisions of this, as well as other states, that the implied limitation against the delegation of the lawmaking power was never intended to prevent Legislatures from authorizing their own appointed agencies to make such minor rules and regulations as are necessary or appropriate for the administration and enforcement of the general laws of the state. State v. Montgomery et al., Excise Commissioners, 177 Ala. 212, 240, 59 South. 294; Ferguson v. Starkey, 192 Ala. 471, 68 South. 348; Fox v. McDonald, 101 Ala. 51, 69, 70, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; 12 R. C. L. 1265, § 3, and cases cited; 12 Corp. Jur. 847, § 330.

"Any power not legislative in character which the Legislature may exercise, it may delegate, and before a court can properly hold that a statute is void as unconstitutionally delegating legislative power, it must clearly appear that the power in question is purely legislative." 12 Corp. Jur. 840.

"The Legislature cannot delegate to private corporations the power to make laws. It may, however, employ them in an administrative capacity to carry a law into effect, or to select or appoint officers for the purpose, and may authorize them to make reasonable rules and regulations for the conduct of their business." 12 Corp. Jur. 843, § 328; Crescent Live Stock Landing, etc., Co. v. New Orleans, 33 La. Ann. 934; Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394.

These authorities will serve to illustrate the latitude accorded to Legislatures in choosing and empowering the appropriate agencies for the administration of the laws, and the promotion of the public weal.

The chief point of attack in the structure of the state board of health of Alabama is in the mode of selecting its members; the objection being that in effect they are selected by the vote of members of the medical association of the state, who, with respect to such action, are acting in a private capacity, in accordance with the rules of their association, and without responsibility to the state or to the people. Conceding that this is true, and admitting the moral force of the objection, we are still unable to see that any constitutional inhibition is thereby violated.

In Brooks v. State, 88 Ala. 122, 6 South. 902, it was held that statutes (Code 1886, §§ 1296–98), regulating the practice of medicine by requiring a license from a county medical board organized under and in accordance with the constitution of the medical associa-

tion of the state, were free from any constitutional objection. In that case the personnel of the county board was determined by the action of the county medical association, under the rules of the state association, and the objection made here could, for the same reason, have been made there. It is true that it does not appear to have been specifically urged, but it must be regarded as significant that such an objection did not even occur to the mind of so astute a student of constitutional limitations as Chief Justice Stone.

It is to be observed that the power of private corporate selection here complained of is indirect and not immediate, for, after all, the Legislature designates the board of health, though it selects therefor a corporate organization whose individual membership is predetermined by the rules of that corporation. But, even so, there is a legislative adoption of those rules as the appropriate mode of selection, and it is clearly within the power of the Legislature to direct and formulate those rules, and to change them at its pleasure.

But, those considerations aside, the authorities strongly support the authority of the Legislature to vest in private associations of this sort the power to select or appoint members of state boards constituted for the administration of public affairs. In Overshiner v. State, 156 Ind. 187, 59 N. E. 468, 51 L. R. A. 748, 83 Am. St. Rep. 187, it was held that the appointment of members of the state board of dental examiners may be vested in the state dental association. In Bullock v. Billheimer, 175 Ind. 428, 94 N. E. 763, it was held that the appointment of the members of an advisory committee of a state agricultural station may be delegated to various incorporated agricultural societies. In Scholle v. State, 90 Md. 729, 46 Atl. 326, 50 L. R. A. 411, it was held that a private corporation may be legally authorized to appoint a board of medical examiners. In Ex parte Gerino, 143 Cal. 412, 77 Pac. 166, 66 L. R. A. 249, it was held that the Legislature could authorize certain medical societies (not public corporations) to name or appoint the members of the state board of health.

Those decisions were rendered under the influence of constitutional provisions regulating the organization of the state government not materially different from ours.

[5] We might have conceded, for the purposes of the above discussion, that the Medical Association of the State of Alabama was and is a private corporation, without affecting our conclusion. We are nevertheless of the opinion, having regard to its organization, aims, and activities, and its relation to the state board of health and to the public welfare in general, that it is a quasi public corporation, charged with duties and responsibilities which it cannot evade, and is therefore, even under a much narrower construc-

tion of legislative power than we have accorded, an appropriate agency for service in the administration of the health laws of the state. This view is emphasized by section 3 of the act of March 5, 1915 (Gen. Acts 1915, p. 160), to authorize medical, dental and pharmaceutical associations, incorporated in Alabama, to change or extend their charters by voluntary prescribed action. Section 3 provides:

"When any such corporation is now or hereafter may be charged by law with public or quasi public functions alterations to or amendments or extensions of its charter, made in accordance with the provisions of this act, shall in no manner add to, detract from or modify said functions or the rights and duties of the corporation in reference thereto; but no such alteration, amendment or extension of the charter of any corporation so charged by law shall be made which will interfere with the discharge of said functions."

As we have already stated, the present structure of the state board of health has existed, under public statutes, since 1875, a period of nearly half a century. So far as we are advised, its legality has never been questioned, and two constitutional conventions have met and adopted new, and readopted old, constitutional provisions, without undertaking to curb this notorious and extended exercise of legislative power.

[6] We are in accord with the view that—

"Old age cannot give validity to a void statute, nor will acquiescence for any length of time, nor any amount of practical construction, prevent a court from declaring void a statute which clearly contravenes the Constitution." 12 Corp. Jur. 798, 799; Boyd v. Alabama, 94 U. S. 645, 24 L. Ed. 302.

But the uniform legislative interpretation of doubtful constitutional provisions, running through many years, is of weighty consideration with the courts. Ex parte Hardy, 68 Ala. 303; Moog v. Randolph, 77 Ala. 597, 606; Farrior v. N. E. M. Security Co., 88 Ala. 275, 279, 7 South. 200; Jones v. McDade, 200 Ala. 230, 75 South. 988.

The constitutional inhibition here invoked by complainants is implied and not expressed, implied from those express provisions, such as are found in sections 42 and 43 of the Constitution of 1901, brought down from the first Constitution of the state, and apportioning the various functions of government, executive, legislative, and judicial, to separate and distinct bodies of magistracy, and confining each body to its appropriate functions, except as otherwise expressly provided.

The limits beyond which a Legislature thus constituted may not go in the delegation of those portions of its sovereign power which are not strictly legislative in character have never been clearly and certainly defined. A study of the laws and decisions of this and other states will show that there has always

been a twilight zone within which the legislative practice has vacillated and judicial opinion has varied, with respect to the exercise of that prerogative. The tendency of the courts, as the guardians and expounders of Constitutions, has been and is to accord to legislative action of this character the utmost liberality that is possible, consistently with the preservation of the organic structure of their governments.

The assumption and exercise by our Legislature of the particular power here in question, unchallenged for nearly 50 years, and acquiesced in by the people and by their representatives in convention assembled, must, in the absence of any expressed inhibition, and of any clearly defined implication to the contrary, be given very weighty consideration by this court, a consideration which would dissolve much stronger doubts of constitutional validity than any we can venture to entertain.

The contention of complainants has been presented with unusual force and ability. Our limitations of time and space do not permit of an extended review of every phase of the argument. Suffice it to say, that we have given careful consideration to the questions involved, and have reached our conclusions without any serious doubt as to their correctness.

We hold that the state board of health is a legal body, lawfully empowered, and that it is entitled, through its legally qualified state health officer, to receive and, within the law, to expend the money appropriated thereto by the Legislature.

It results that the bill of complaint is without equity, and the demurrer thereto was properly sustained by the trial court.

The judgment will therefore be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

⊝═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes