632 So.2d 24 (1993)
R.S.B.
v.
STATE.
CR-91-1286.
Court of Criminal Appeals of Alabama.
March 5, 1993.
*25 Al Vreeland, Tuscaloosa, for appellant.
James H. Evans, Atty. Gen., and Gregory Griffin, Sr., Asst. Atty. Gen., for appellee.

ON RETURN TO REMAND
TAYLOR, Judge.
The appellant, R.S.B., a juvenile, was adjudicated delinquent by the Juvenile Court of Tuscaloosa County on the underlying misdemeanor offenses of hunting without permission on the lands of another, in violation of § 9-11-241, Code of Alabama 1975, and of failing to wear a blaze orange cap or vest, as required by Rule 220-2-.85(1) of the Alabama Department of Conservation and Natural Resources. The juvenile court fined the appellant $50 for hunting on the lands of another without permission and $25 for failing to wear blaze orange, and also assessed court costs, but found the appellant not in need of care or rehabilitation.
We remanded this cause to the juvenile court so that that court could clarify its order on the status of the appellant. 632 So.2d 23 (Ala.Cr.App.1992). The juvenile court has filed a return of its order, but we find that the court did not comply with our directions.
In its order on return to remand, the juvenile court found that the appellant was delinquent but that he was not in need of care or rehabilitation at state expense. As we stated in our original opinion, this finding is contrary to the applicable statutes, which require the court, if it finds the appellant delinquent, to find the appellant in need of care or rehabilitation.
The juvenile court expressed concerns in its order on remand that to hold that a juvenile is "in need of care or rehabilitation" requires that the juvenile "would have to be court ordered at State expense into probation, detention, etc. in order to support the imposition of any sanction, be it fine, costs, fees or restitution." Our reading of the pertinent statutes leads us to a different conclusion. Code of Alabama 1975, § 12-15-71, provides several avenues pursuant to which the court may dispose of the juvenile's case upon finding the juvenile in need of care or rehabilitation. This includes, as the court did in this case, permitting the juvenile to remain with his parents or guardian, § 12-15-71(c)(1), and assessing a fine against the juvenile, § 12-15-71(c)(5). A court does not have to remand a delinquent child to the care of the state. This option available to the juvenile court under § 12-15-71(c)(1), i.e., permitting the child to remain with his parents, provides for disposition of the case without state expense.
However, § 12-15-65(d) states:
"If the court finds that the child is not in need of care or rehabilitation, it shall dismiss the proceedings and discharge the *26 child from any detention or other temporary care therefore ordered."
(Emphasis added.)
From a reading of the juvenile court's order on remand, it appears that the court found the child to be delinquent but did not want to use the resources of the state to dispose of the case. The trial court here intended that the appellant's rehabilitation be attempted under the supervision of his parents. The statute provides for this option. § 12-15-71(c)(1). However, before this option may be taken, the court must first make a finding that the child is in need of care or rehabilitation.
This case is, therefore, again remanded to the Juvenile Court for Tuscaloosa County, for that court to correct its order concerning the status of the appellant. If the court finds the child delinquent, then it must also find the child in need of care or rehabilitation and may remand the child to the custody of his parents. If the court does not find the appellant in need of care or rehabilitation, we have no choice but to reverse the juvenile court's finding.
In the interest of judicial economy, we will address the other issues presented by the appellant.
The state's evidence tended to show that, on December 15, 1991, Ralph Dorroh saw the appellant and the appellant's hunting partner enter his property. Both youths were carrying hunting rifles, and had entered Dorroh's property from adjacent property owned by Gulf States Paper Company that was being used as a hunting club. Dorroh watched the youths for approximately one hour before he approached the appellant's partner, who had by then walked back onto Gulf State's property. The appellant's partner indicated to Dorroh that the appellant was "on the other side of the pipeline," i.e., that he was still on Dorroh's property. Dorroh found the appellant on his property. The appellant told Dorroh that he thought that he could hunt on Dorroh's property, so long as he stayed within 100 yards of Gulf State's property line. Dorroh testified that neither youth had permission to hunt on his property. Dorroh presented photographs of the property line, showing trees marked with yellow paint, which indicated the property line between the Gulf States property and his property. He testified that his property was clear-cut and that there was a distinct line between the two parcels of property. Dorroh further testified that, while the appellant had been wearing an orange hat when he entered Dorroh's property, he was not wearing it when Dorroh talked to him.

I
First, the appellant contends that the state's evidence was insufficient to find that he was intentionally hunting on the lands of another without permission. Section 9-11-241, Code of Alabama 1975, states, in pertinent part:
"Any person who hunts, traps, captures, injures, kills or destroys or attempts to hunt, trap, injure, kill or destroy any wild game on the lands of another between the hours of daylight and sunset without the written permission of or accompanied by the landowner or person in possession or control of said lands shall be guilty of a misdemeanor and upon conviction, shall be punished for the first offense by a fine of not less than $250.00...."
The referee found as a fact that the appellant was intentionally hunting on the lands of another without permission, in violation of § 9-11-241, Code of Alabama 1975. The testimony of the complaining witness, Ralph Dorroh, was legally sufficient to support this finding. Further, the appellant testified that he knew he was not on Gulf State's property at that time, but further testified that he misperceived the law as to where he was permitted to hunt. Ignorance of the law is no excuse.
Further, "it is not the province of this court to reweigh the evidence presented at trial." Watkins v. State, 565 So.2d 1227, 1231 (Ala.Cr.App.1990). There was ample evidence presented from which the referee could have found the juvenile guilty, beyond a reasonable doubt, of hunting on the lands of another without permission.

II
Next, the appellant contends that the trial court erred in denying his motion to *27 dismiss count two of the petition, which charges failure to wear "hunter orange," in violation of Rule 220-2-.85(1) of the Alabama Department of Conservation and Natural Resources. He specifically argues that the commissioner of the Alabama Department of Conservation and Natural Resources exceeded his legislative authority when he enacted the requirement that all hunters wear "hunter orange." Rule 220-2-.85(1) states:
"All persons hunting any wildlife species (except waterfowl, turkey, and mourning dove and while hunting legally designated species during legal nighttime hours) during dates and in areas open by regulation to gun deer season are required to wear an outer garment above the waist with a minimum of 144 square inches of hunter orange or either a full size hunter orange hat or cap. Hunters are not required to wear hunter orange when hunting from a stand elevated 12 feet or more from the ground; however, hunter orange must be worn when traveling to or from the elevated stand. A small logo and/or printing is permitted on the front of hunter orange caps; otherwise, hunter orange must be of solid color and visible from any angle. Only hunter orange, commonly called blaze orange, ten mile cloth, etc., is legal. The various shades of red are not legal."
Section 9-2-2, Code of Alabama 1975, states, pertinent part:
"The general functions and duties of the department of conservation and natural resources shall be as follows:
"(1) To protect, conserve and increase the wildlife of the state and to administer all laws relating to wildlife and the protection, conservation and increase thereof.."
(Emphasis added.)
"The commissioner of conservation and natural resources shall have all power and authority necessary or convenient to carry out the functions and duties of the department of conservation and natural resources." § 9-2-6, Code of Alabama 1975. Further, § 9-2-7, Code of Alabama 1975 states, in pertinent part:
"(a) The commissioner of conservation and natural resources is hereby vested with the power to enforce and administer all laws providing for the preservation, protection, propagation and development of wild birds, wild fur-bearing animals, game fish, saltwater fish, shrimp, oysters and other shellfish, crustaceans and all other species of wildlife within the state or within the territorial jurisdiction of the state which have not been reduced to private ownership, except as otherwise provided.
"(b) The commissioner of conservation and natural resources is empowered:
". . . .
"(6) To regulate the manner, means and devices for catching or taking game fishes, game birds, game and fur-bearing animals and the manner, means and devices for catching or taking all other species of fish not designated as game fish;
". . . .
"(8) To designate by name what animals shall be classed as game or furbearing animals and the time, manner, means and devices for taking same...."
(Emphasis added.)
Last, § 9-2-12, Code of Alabama 1975, states:
"The commissioner of conservation and natural resources shall have and exercise all rule-making powers of any division of the department of conservation and natural resources subject to the provisions of section 9-2-15. The commissioner of conservation and natural resources shall have power and authority to establish and promulgate rules and regulation, including amendments and repeals thereof, with respect to the manner of performance of all functions and duties of the department of conservation and natural resources, which rules and regulations shall be reasonably calculated to effect the expeditious and efficient performance of such functions and duties and shall not be in conflict with applicable statutes. The rule-making power of the commissioner of conservation and natural resources shall not be delegated, except as otherwise expressly provided."
*28 The Alabama Supreme Court, in Ex parte Jones Mfg. Co., 589 So.2d 208 (Ala.1991), set forth the general rules concerning administrative regulations:
"An administrative regulation must be consistent with the statutes under which its promulgation is authorized. Ex parte City of Florence, 417 So.2d 191 (Ala.1982). An administrative agency cannot usurp legislative powers or contravene a statute. Alabama State Milk Control Bd. v. Graham, 250 Ala. 49, 33 So.2d 11 (1947). A regulation cannot subvert or enlarge upon statutory policy. Jefferson County Bd. of Ed. v. Alabama Bd. of Cosmetology, 380 So.2d 913 (Ala.Civ.App.1980)."
589 So.2d at 210.
We agree that departments of the executive branch of government must not arrogate powers vested exclusively in the legislative branch of government by the state constitution. We hold that the commissioner did not exceed his authority when he enacted the "hunter orange" requirement for hunters. Adoption of regulations for hunting is a reasonable exercise of the rule-making authority granted the commissioner of conservation and natural resources and the regulation requiring hunters to wear blaze orange is consistent with the statute discussed above.
"All reasonable rules and regulations of the State Department of Conservation have the force and effect of law, and courts may take judicial notice of the same." West v. State, 30 Ala.App. 318, 6 So.2d 434 (1941), cert. denied, 242 Ala. 369, 6 So.2d 436 (1942). See also Sanders v. State, 53 Ala.App. 534, 302 So.2d 117 (1974).
The trial court did not err in denying the appellant's motion to dismiss count two of the petition.

III
Last, the appellant argues that the state failed to prove two elements of the violation of the "hunter orange" rulethat the violation occurred "during dates and in areas open by regulation to gun deer season." However, a careful review of the record indicates that this issue has not been preserved for our review. Our jurisdiction is appellate only. Trawick v. State, 431 So.2d 574 (Ala.Cr.App.1983). We will not consider matters on appeal that have not first been presented to the trial court. Harris v. State, 420 So.2d 812 (Ala.Cr.App.1982).
This cause is remanded to the Juvenile Court for Tuscaloosa County for correction of its ruling concerning the status of the appellant in accordance with the foregoing opinion. Due return shall be filed with this court no later than 28 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
PATTERSON and McMILLAN, JJ., concur.
BOWEN, P.J., concurs in result only.
MONTIEL, J., concurs in part, dissents in part with opinion.
MONTIEL, Judge, concurring in part, dissenting in part.
I concur with the majority's holding in Parts I and III of the opinion. However, I must dissent from the majority's holding in Part II of the opinion.
"As a general rule, the legislature may delegate to its own appointed administrative agencies the authority to make such minor rules and regulations as are necessary or appropriate for administration or enforcement of its general statutes."
Evers v. Board of Medical Examiners, 516 So.2d 650, 655 (Ala.Civ.App.1987) (emphasis added). The offense of failure to wear hunter orange, which is a violation of Rule 220-2.85 of the Conservation Department, constitutes a misdemeanor. The designation of conduct as a criminal offense is not a minor rule or regulation. "[T]he law making power, invested exclusively in the Legislature, cannot be delegated to any other department of the government, or to any other agency, either public or private.... Official action cannot be made a rule or regulation merely by calling it a rule or regulation." State v. Vaughan, 30 Ala.App. 201, 203, 4 So.2d 5 (1941) (holding that a rule made by the conservation department was unconstitutional because the rule accomplished results which could only be enacted by the Legislature).
*29 The designation of conduct as a criminal offense can only be done by the Legislature.
I believe that Rule 220-2-.85 is an unconstitutional usurpation of the power of the legislature. Therefore, I must dissent.